UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JIMMY RAY WASHINGTON                    CIVIL ACTION NO. 07-cv-1156

VERSUS                                  JUDGE STAGG

WARDEN LOUISIANA STATE                  MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

Three Shreveport women, between June and September 1999, were raped in their homes by an intruder who gained entry on each occasion by removing a window pane. Children were present in the homes, and some money or property was taken on two of the occasions. The victims described the rapist as an African-American male.

Jimmy Ray Washington ("Petitioner") became a suspect after a concerned citizen told police that she suspected Petitioner was the rapist because she overheard him admit to raping several women. Police found a DNA sample taken from Petitioner in a 1993 investigation. Police recovered semen from two of the rape victims. The rapist did not ejaculate during the third crime, but he did cut himself on the window and leave blood on a bed comforter. The 1993 sample matched DNA samples obtained from the three crime scenes. A DNA analyst testified at trial that the crime scene samples were identical and matched samples obtained from Petitioner after his arrest. The analyst calculated the odds of an African-American, other than Petitioner, having the same DNA profile as the blood and semen taken from the

crime scenes at one in 38.4 trillion. Tr. 1632-80. (The published odds of winning the Powerball grand prize are extraordinarily better, about one in 195 million.)

A Caddo Parish jury found Petitioner guilty of three counts of aggravated rape, two counts of armed robbery, one count of aggravated oral sexual battery, and two counts of indecent behavior with juveniles. Petitioner was sentenced to three consecutive life sentences for the rape convictions, 99 years for one armed robbery and 40 years for the other, 20 years for the aggravated oral sexual battery, and one year on each indecent behavior conviction. He pursued a direct appeal and state post-conviction remedies. He now presents a petition for federal habeas corpus relief. It is recommended, for the reasons that follow, that the petition be denied as untimely.

**Running of One-Year Limitations Period**

### A. Commencement

A one-year period of limitations applies to petitions for habeas corpus. In an ordinary case, such as this one, the limitation period runs from the date on which the state court judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The first step in assessing timeliness is, therefore, to determine when Petitioner's conviction became final and triggered the commencement of the one-year limitations period.

In a typical case where a convicted person timely pursues his direct appeal through a writ application to the Supreme Court of Louisiana, the conviction becomes final for

federal habeas purposes 90 days after the state's high court enters its judgment, which is when the time to file a petition for writ of certiorari with the United States Supreme Court has expired. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). Petitioner's direct appeal process ended on September 19, 2003. See State v. Washington, 828 So.2d 97 (La. App. 2d Cir. 2002), writ denied, 853 So.2d 631 (La. Sept. 19, 2003). The conviction became final for habeas purposes 90 days later, in December 2003.

### B. Effect of First Federal Petition

Petitioner filed a federal petition for habeas relief just days after the Supreme Court of Louisiana denied his writ application on direct appeal. Washington v. Warden, 03-cv-1768. Petitioner presented some claims on which he had not yet exhausted his state court remedies. This court issued an order that explained to Petitioner that it must dismiss a "mixed petition" that includes both exhausted and unexhausted claims. Petitioner was given the choice of maintaining the petition and risk having it dismissed entirely, dropping the unexhausted claims and going forward with exhausted claims only, or dismissing the entire petition so that he could exhaust all of his claims and return later to seek habeas review. The court warned Petitioner of the procedural risks that accompanied each choice, and the warning specifically included notice that any future filings could be barred by the one-year statute of limitations if Petitioner attempted to return to federal court at a later date.

Petitioner filed a 15-page memorandum and urged that his case was special and should go forward despite the lack of exhaustion of state court remedies on all issues. This court then dismissed the mixed federal petition without prejudice in May 2005. Petitioner did not appeal.

The federal petition was pending between 2003 and its dismissal in May 2005, but that filing had no effect on the running of the one-year federal limitations period. The time during which a "properly filed application for *State* post-conviction or other collateral review" is pending is not counted toward the period of limitation. 28 U.S.C. § 2244(d)(2) (emphasis added). The Supreme Court has held that an application for *federal* habeas review does not come within the scope of this tolling provision. Duncan v. Walker, 121 S.Ct. 2120 (2001). Accordingly, the first federal petition is irrelevant to the timeliness analysis.

### C. First State Post-conviction Application

Petitioner filed his first application for state post-conviction review in July 2003, even before the Supreme Court of Louisiana had denied writs with respect to his direct appeal. Tr. 1845. Thus, the federal limitations period had not even begun to run at the time of that filing. In that first application, Petitioner sought copies of transcripts and records. The trial judge granted in part and denied in part the petition on July 29, 2004. Tr. 1864. There is no indication Petitioner applied for a writ to the state appellate court following that decision, so any tolling effect of this first application ended on the 30-day deadline for seeking such appellate relief. Melancon v. Kaylo, 259 F.3d 401, 407 (5th Cir. 2001).

The court will assume that this first application, though perhaps premature, had a tolling effect and delayed the commencement of the federal limitations period during the time it was pending. It will also assume that the tolling effect lasted until Monday, August 30, 2004, the first business day after the expiration of the 30-day period to seek appellate relief. Thus, the federal limitations period will be assumed to have begun to run for the first time on August 30, 2004.

Frankly, however, the undersigned believes that this first post-conviction application (like the first federal petition) had no tolling effect, so that the federal limitations period began to run when the conviction became final in December 2003. Despite the title of the filing, the first post-conviction application did not attack the convictions. Rather, it merely asked for free copies of the trial transcript, court minutes, medical records, chemical analysis reports, and other exhibits or documents related to the trial. A review of the tolling provision, below, suggests that this filing did not trigger it.

The tolling provision of 28 U.S.C. § 2254(d)(2) states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." The Fifth Circuit has held that a petition for writ of mandamus to direct the state trial court to rule on a previously denied post-conviction matter is not an application for collateral review of the judgment of conviction so it does not toll the limitations period. Moore v. Cain, 298 F.3d 361 (5th Cir. 2002). Citing Moore, an

unpublished opinion has observed: "The filing of [a] motion for transcripts in the trial court did not toll the limitations period because it did not constitute 'collateral review with respect to the pertinent judgment.'" Torns v. Mississippi, 54 Fed. Appx. 592 (5th Cir. 2002). Petitioner's first state post-conviction filing sought only transcripts and records and did not seek review of the convictions (that were still traveling through the direct appeal process), so the undersigned believes that it most likely had no tolling effect on the federal limitations period.

### D. Second State Post-conviction Application

Petitioner filed his second application for state post-conviction relief in July 2005. The application is entitled to the benefit of the prisoner mailbox rule. LeBeuf v. Cooper, 2007 WL 1010296 (5th Cir. 2007) ("We have extended the mailbox rule to determine the filing dates for Louisiana postconviction relief PCR applications"), citing Causey v. Cain, 450 F.3d 601, 605-06 (5th Cir.2006). Petitioner signed the application on July 18, 2005 (Tr. 1867, 1869), and the court will give him the benefit of the doubt that he tendered the application to prison officials for mailing on that same date, which tolled the federal limitations period. The federal limitations clock ran for 322 days between the August 30, 2004 cessation of the tolling effect of the first post-conviction application and the July 18, 2005 filing of the second post-conviction application. (If the first post-conviction application that sought only transcripts and records did not toll the federal limitations period, then the limitations period would have expired by the time this second application was filed, and an

expired period cannot be revived by a later-filed state application. Scott v. Johnson, 227 F.3d 260, 263 (5th Cir.2000).)

The state trial court denied the application on the merits in February 2006. Tr. 1909-12. Petitioner's application for a supervisory writ to the appellate court was denied on April 5, 2006. Tr. 1950. The Supreme Court of Louisiana denied a writ application on April 20, 2007 (Tr. 1994), bringing an end to the second post-conviction application.

The 90-day opportunity to apply to the United States Supreme Court for a writ of certiorari delays the date a conviction becomes final and commences the federal limitations period. But neither that 90-day opportunity nor the actual filing of a petition for certiorari after the state's high court denies a post-conviction application will continue the tolling effect of the application. Lawrence v. Florida, 127 S.Ct. 1079 (2007); Johnson v. Quarterman, 483 F.3d 278, 288 (5th Cir. 2007). Thus, the potential tolling effect of the second post-conviction application ended when the Supreme Court of Louisiana denied the writ application on April 20, 2007.[1]

---

[1]The State argues that Petitioner's application to the Supreme Court of Louisiana was filed approximately 60 days late, which would have terminated any tolling effect of the second post-conviction application in mid-2006. The Fifth Circuit has held that if a prisoner fails to file his writ application to Louisiana's high court within the 30 days permitted by Louisiana Supreme Court Rule X, §5(a) but later files an untimely petition that is denied without comment, the untimely petition does not toll the limitations period. Williams v. Cain, 217 F.3d 303 (5th Cir. 2000).

Petitioner's writ application was due on about May 5, 2006. It has a typed date on the cover of May 1, 2006 (Tr. 1951), a date on the certificate of service of May 4, 2006 (Tr. 1987), but a date by Petitioner's signature on a related filing sheet that appears to be "7.5.06" (Tr. 1952). The petition could not have been mailed until after the latest date,

### E. Filing this Federal Petition

The prisoner mailbox rule deems a federal habeas petition filed when the prisoner tenders it to prison officials for mailing to the district court. Spotville v. Cain, 149 F.3d 374 (5th Cir. 1998). Petitioner signed his federal habeas petition on July 2, 2007, so that was the earliest date he could have tendered it for mailing and stopped the limitations period. Between the Supreme Court of Louisiana's final decision on April 20, 2007 and the signing of the federal petition on July 2, 2007, a total of 73 days passed. When those 73 days are added to the 322 days that expired earlier, the total is 395 days. Petitioner was allowed only 365 days of un-tolled time within which to file his federal petition. He did not meet that obligation, so his petition should be denied. As noted above, Petitioner is most likely much more untimely than 30 days. The court has given Petitioner the benefit of some doubts that, if the issues were pressed, would likely be resolved against Petitioner and result in his petition being untimely by about three years rather than 30 days.

After the State raised the timeliness defense in its brief, Petitioner filed a reply. Doc. 19. Petitioner did not offer any specific argument that his petition was timely. Rather, he argued that he has diligently presented his case to the courts and that his claims should be

---

which appears to be July 5, and an entry from the Supreme Court of Louisiana states that the filing was "metered" on July 7, 2006. Tr. 1950A. Accordingly, the State has a solid argument that the writ application was untimely so that any tolling effect of the second post-conviction application ended 30 days after the appellate court's 2006 ruling. The court need not rest its decision on this ground, however, because the federal petition is untimely even if it is assumed the tolling effect lasted through the Supreme Court of Louisiana's writ denial.

reviewed on the merits – despite any untimeliness – in the interest of the integrity of the justice system.

The only potential grounds to overcome the timeliness defense is the doctrine of equitable tolling. It is available in rare and exceptional circumstances, such as where the prisoner is physically unable to file or when district court has done something to mislead the petitioner. Johnson v. Quarterman, 483 F.3d 278, 286 (5th Cir. 2007). Petitioner has not presented any extraordinary circumstances that would warrant the application of equitable tolling. This case instead presents the rather ordinary circumstances in which the petitioner missed his one year deadline for no particular reason evident from the record. The court has no grounds on which to ignore the State's meritorious timeliness defense.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be **denied**, and that his complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of April, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE